J. M. Zuccarello *v.* N. & C. R. R. Co.

---

---

## J. M. ZUCCARELLO *v.* N. & C. R. R. Co.

RAILROAD. *Turnpike. Respective Liability of. In crossing each other.* Where a Railroad and Turnpike Company have their routes located by the requirements of their charters over and across the same ground, but the railroad's right accrues first by priority of its charter, though both are constructed at the same time, the Turnpike Company is responsible for injuries sustained by its travelers occasioned by the want of bannisters and other safeguards at the crossing of the railroad, as in such case it is the duty of the Turnpike and not the railroad to provide the same.

---

### FROM DAVIDSON.

---

Appeal from the Circuit Court.   EUGENE CAREY, Judge.

S. W. CHILDRESS for Zuccarello.

G. M. FOGG for the Company.

NICHOLSON, C. J., delivered the opinion of the Court.

Zuccarello, while driving his wagon on the Middle Franklin Turnpike, was injured in attempting to cross

the track of the Chattanooga Railroad, in consequence of his horse being frightened by the smoke from an engine, emerging from the tunnel over which the Middle Franklin Turnpike was constructed; and for. the injury he sued the · Mayor and City Council of Nashville, and the Nashville & Chattanooga Railroad Company, in the Circuit Court of Davidson County. The suit as to the Mayor and City Council having been disposed of, and judgment having been given for the Nashville and Chattanooga Railroad Company, Zuccarello has appealed to this Court.

It is averred in the declaration that on the 11th of March, 1869, it became the duty of the Nashville & Chattanooga Railroad Company, to keep in repair and provide a safe and easy passage over and beyond that portion of a certain street or road formerly known as the Granny White or Middle Franklin Pike, under which the said railroad is built and runs, but that the said Railroad Company omitted and failed to do so, and that while the said portion of said street or road was so out of repair and dangerous to be traveled, the plaintiff, while driving his wagon over the said portion of said street or road was upturned and precipitated over an embankment, which would not have occurred if proper railings or bannisters had been put up, whereby the plaintiff was injured to his damage $20,000.

Upon the trial of the cause, the Circuit Judge charged the jury, that "if they should find that the road at the point where the accident happened was

the property of the Middle Franklin (Granny White) Turnpike Company, in the possession of the Company, and under its control, the Turnpike Company was bound in law to see that that part of its road was kept in good order and safe condition for those whom they permitted to travel upon it; and if the Turnpike Company failed so to keep the road in order, that Company, and not the Railroad Company was responsible for the injury, and that the construction of the railroad across or under said Turnpike road, would not divest the Middle Franklin Turnpike Company of its property in that point of the road, nor would it be relieved from liability for failing to keep that point of the road in good order."

Under this charge and the proof in the cause, the jury found for the defendant.

It appears that the Nashville & Chattanooga Railroad Company, was chartered in 1845, and its route located; but before the completion of that part of the road where the accident in question occurred, the Middle Franklin Turnpike was chartered, to be constructed along the old Granny White road. It appears, also, that the railroad was located along and across that portion of the Granny White road where the tunnel was made, and that the Middle Franklin Turnpike was chartered to run on the same ground. An arrangement was made between the Railroad and Turnpike Companies, whereby the railroad was to excavate the ground, and so cover it in as to make a tunnel, over which the turnpike could be made. This

arrangement was carried out in pursuance of the arrangement, and that portion of the work agreed to be executed by the Railroad Company was completed and accepted by the Turnpike Company. According to this arrangement the Railroad Company constructed a road by means of embankments, by which the turnpike led by an easy ascent to the top of the tunnel near its termination, and then followed the top of the tunnel as the bed of the turnpike, until it entered Broad street, in Nashville. After the road was so constructed by the Railroad Company, and received as completed by the Turnpike Company, the latter put up railings so as to make the approach to the top of the tunnel safe from accidents.

This railing continued to be kept up by the Turnpike Company until it was torn away by the Federal army, who also made a deep excavation near the turnpike, and about the place where the turnpike commenced ascending to reach the top of the tunnel. After the war the Turnpike Company failed to replace the railing, or to have the pit excavated by the Federal army filled. In consequence of the absence of the railing, the horse of plaintiff, when ascending towards the top of the tunnel, became frightened by the smoke from a locomotive emerging from the tunnel, and backing down the grade, his wagon was precipitated into the pit referred to, and he and his horse seriously injured.

The averment in the declaration is, that plaintiff was injured in consequence of the road leading up the

embankment to the top of the tunnel not having proper railings or bannisters put up, and that it was the duty of the Railroad Company to have put up such railing or bannisters.

According to the proof, the public had an easement in that part of the ground occupied by the railroad and the turnpike, as part of the Granny White road, for many years before either of these roads was chartered. It may be questioned whether the Legislature could grant to a Railroad or Turnpike Company the right to appropriate the easement which the public have in a public road to the construction of a railroad or turnpike, without the consent of the owners of the fee, and without compensation therefor.

But no such question is raised, either by the pleadings or the proof. We may assume for the purposes of the present case, that the old road ceased to exist as a public easement after the construction of the railroad and turnpike. The only question raised by the pleadings and proof is, whether the Railroad Company was bound to protect travelers on the turnpike from injuries, by constructing railings or bannisters on that part of the turnpike approaching to and upon the tunnel, so as to avoid such accidents as occurred in the present case.

It is clearly the duty of a Railroad Company, in constructing their road either over or under a public road or turnpike, to make the travel on such public road or turnpike as safe as practicable. But in the

case before us, there was no existing turnpike to be crossed by the railroad.

The rights of the Railroad Company first accrued, and when the Turnpike Company was chartered, the duty devolved upon that company to so construct its road in reference to the railroad as to insure safety to travel on its own road.

It appears from the proof that the two Companies acted in concert in securing to each its chartered rights, and both seem to have understood that when the Railroad Company had completed the road approaching the tunnel, according to contract, that then the Turnpike took control of it, and proceeded to make travel on it safe by means of the necessary railings or bannisters. We think it manifest that the Turnpike Company construed their duties and obligations correctly in putting up the railings or bannisters on their road, and that the accident in question was the result of the negligence of the Turnpike Company, and not of the Railroad Company. It follows that there was no error in the charge of the Court, and the judgment is affirmed.